UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                                    Case No.  16-31434
        Mark B. Bush,                                     Chapter 13
                        Debtor.

Appearances:

Theodore Lyons Araujo, Esq.                          *for Mark B. Bush (Debtor)*
Bankruptcy Law Center
Bodow Law Firm, PLLC
6739 Myers Road
East Syracuse, NY 13203

Edward Y Crossmore, Esq.                             *for Jennifer Bernheim*
*(Creditor)*
Crossmore Law Office
115 W. Green St,
Ithaca, NY 14850

## MEMORANDUM-DECISION AND ORDER DENYING MOTION TO DISMISS AND OVERRULING OBJECTION TO CLAIM NO. 2-2

Jennifer Bernheim ("Creditor") has moved to dismiss this chapter 13 bankruptcy case on

the principle of judicial estoppel or, alternatively, failure to file the petition in good faith

("Motion"). Separately, Debtor objects to that portion of Creditor's proof of claim which seeks to

recover temporary spousal maintenance arrearage ("Objection"). The court conducted a joint

evidentiary hearing on both the Motion and Objection on June 21, 2017, and the Motion and

Objection are now before the court for decision.

Based upon the record of these proceedings[1] and for the reasons discussed below, the court

denies the Motion and overrules the Objection.

## FACTUAL RECORD AND PROCEDURAL BACKGROUND

*Chronology of State Court Litigation and Claims*

Creditor and Debtor were previously married. During the course of protracted divorce

proceedings, Creditor orally stipulated in court that she waived spousal maintenance

("Stipulation"). EX. 10. Despite the Stipulation, Creditor petitioned the court five months later for

---

[1] The pleadings and other CM/ECF filings include: (i) October 13, 2016 Chapter 13 Plan (Doc. 2); (ii) December 7, 2016 motion to dismiss case (Doc. 12) ("Motion"); (iii) December 13, 2016 memorandum of law (Doc. 13); (iv) affidavit of Creditor's counsel, Edward Crossmore, Esq., sworn to on December 23, 2016, with attached exhibit (Doc. 28); (v) response and attorney affirmation dated January 5, 2017, by Debtor's counsel, Theodore Araujo, Esq., with attached exhibits: (A) notice of motion entered in state court dated May 4, 2016, (B) affidavit of Thomas P. Cramer, Esq, sworn to on May 4, 2016, and (C) affidavit of Debtor sworn to on January 5, 2017 (Doc. 29); (vi) affidavit of Creditor, sworn to on January 9, 2017, with attached exhibits (Doc. 31); (vii) affidavit of Edward Crossmore, Esq. dated January 9, 2017, with attached exhibits (A) through (D), registration records for four vehicles in Debtor's name with NY State Department of Motor Vehicles (Doc. 32); (viii) letter from Edward Crossmore, Esq. to the court, dated January 9, 2017 (Doc. 34); (ix) proof of Claim No. 2-1 filed on December 20, 2016 (Claim 2-1); (x) proof of Claim No. 2-2 filed on January 5, 2017 (Claim 2-2); (xi) objection to Claim No. 2-2 (Doc. 42); (xii) Creditor's pre-trial statement (Doc. 45); (xiii) Debtor's pre-trial statement (Doc. 47); (xiv) Creditor's response to objection to claim (Doc 50); (xv) Creditor's post-trial submission (Doc 60); and (xvi) Debtor's post-trial submission (Doc 61).

The June 21, 2017 evidentiary record consists of: (i) sworn testimony of Creditor, Creditor's state-court divorce attorney, Elizabeth O'Connor, Debtor, Debtor's father, Lyle Eugene Bush, and Debtor's former companion, Rebecca Schramm; (ii) Creditor's trial exhibits: chapter 7 petition, schedules and statement of financial affairs filed on April 27, 2016 ("EX. 1"), chapter 13 petition, schedules and statement of financial affairs filed on October 13, 2016 ("EX. 2"), money judgment entered April 13, 2016 ("EX. 3"), amended money judgment entered May 12, 2016 ("EX. 4"), August 16, 2011 matrimonial state court order awarding temporary maintenance ("EX. 5"), August 31, 2016 state court petition for relief from income execution to enforce support including mistakes of fact, with exhibits ("EX. 6"), June 5, 2012 letter from Debtor to CFCU Community Credit Union ("EX. 7"), January 18, 2012 judgment of divorce ("EX. 8"), August 3, 2016 state court August 3, 2016 order modifying support ("EX. 9"), January 28, 2011 transcript of state court proceedings before Judge Campbell ("EX. 10"), May 12, 2016 order denying Debtor's request to hold Creditor's counsel in contempt ("EX. 11"), July 15, 2016 state court order dismissing order to show cause (EX. 12"), May 31, 2016 state court order to show cause ("EX. 13"), Debtor's May 24, 2016 request for judicial intervention filed in state court ("EX. 14"), Facebook picture posted by Rebecca Schramm of Debtor with tractor and grill in foreground ("EX. 15"), August 11, 2016 Facebook picture posted by Rebecca Schramm of diamond ring ("EX. 17"), photos of red truck, red tractor and ATV located on Debtor's property ("EX. 18"), photo of Debtor on his property with four vehicles visible in background ("EX. 27"), photo of Debtor driving tractor with attached snow removal equipment ("EX. 28"), photo of pole barn on Debtor's property ("EX. 29"); (iii) Debtor's trial exhibits: proof of claim no. 2-1 for $53,533.01 ("EX. A"), amended proof of claim no. 2-2 for $28,074.61 ("EX. B"), January 9, 2017 letter re: amended claim from Edward Crossmore to the court ("EX. C"), May 2, 2016 letter from Debtor's state-court matrimonial counsel,Thomas D. Cramer, to Creditor's state-court counsel Elizabeth O'Connor ("EX. D"), August 16, 2011 matrimonial state court order awarding temporary maintenance, duplicative of that which was previously admitted as Creditor's EX. 5 and referred to as such herein, and amended money judgment entered May 12, 2016, duplicative of that which was previously admitted as Creditor's EX. 4 and referred to as such herein.

an order of temporary maintenance. Acting Supreme Court Justice Julie A. Campbell awarded Creditor temporary maintenance of $440 per week over Debtor's objections.[2] EX. 5. Divorce proceedings concluded with a judgment of divorce on January 18, 2012, which ordered "no award of maintenance, pursuant to the in-court oral stipulation..." EX. 8. It is undisputed that Debtor made no payments during or after the divorce proceedings toward satisfaction of the temporary maintenance order. Temporary maintenance arrears for the period in question total $12,821.60.[3]

At the evidentiary hearing, Attorney Elizabeth O'Connor testified that Creditor subsequently retained her to commence a state court proceeding to enforce the judgment of divorce and the outstanding arrearage which included the award of temporary maintenance.[4] When Debtor failed to answer, Attorney O'Connor moved for default judgment, which Judge Campbell granted in Creditor's favor ("Judgment"). EX. 3. The Judgment awarded Creditor $14,693.99[5] in divorce-related arrears and $38,280.00 in temporary maintenance arrears.[6] Upon receiving notice of entry of the Judgment, Debtor hired counsel to object to the award of temporary maintenance arrears on the basis that the claim was never pled to provide legally sufficient notice to Debtor, and was unfounded. On this basis, Debtor's counsel moved for re-argument and sanctions against Attorney O'Connor. The matter was resolved by Creditor's submission of an amended default judgment that

---

[2] In its order, the state court recited that the award of temporary maintenance was required under New York DRL § 236 B (5-a) (f). This statute sets forth a calculation for mandatory minimum maintenance in cases commenced on or after August 13, 2010. Since divorce proceedings commenced on March 8, 2010— prior to the effective date of the statute—DRL § 236 B (5-a) (f) did not apply to the case at hand. Nevertheless, this court does not sit in appellate review of state court decisions and accepts the order as entered.

[3] The period of time from Creditor's petition for temporary maintenance payments to the judgment of divorce was 29.14 weeks. At $440 per week, temporary maintenance for the period totaled $12,821.60 ($440 x 29.14). In earlier filings in this court and in state court, Creditor had incorrectly calculated these arrears at $38,280.00, based on an 87 week period calculated from May 19, 2010.

[4] At the time Attorney O'Connor represented Jennifer Bernheim she was a practicing attorney in private practice. She currently works for the New York State unified court system and is principal court attorney for Judge Campbell.

[5] This amount includes a $7,000 distributive award, $6,311.91 in unreimbursed daycare expenses owed for the period December 2011 through June 2012, and $1,382.08 in unreimbursed health care costs owed for the period March 2010 through April 2012.

[6] See footnote 3.

struck the award of temporary maintenance arrears. EX. 4. ("Amended Judgment") Creditor now

reasserts in this proceeding her claim for temporary maintenance arrears, seeking $12,821.60 in

her amended claim. EX. B.

*Debtor's Chapter 7 and Chapter 13 Bankruptcy Filings*

Debtor works as a civil engineer for the New York State Department of Transportation.

He filed bankruptcy under chapter 7 on April 27, 2017, shortly after Creditor pursued enforcement

proceedings and recovered the Judgment. He testified that his chapter 7 filing was prompted by

insufficient income to carry his debt load including the Judgment, which he stated he could not

afford. Monthly income and expenses on Debtor's chapter 7 schedules I and J reflect a negative

monthly net income of ($588.51). EX. 1 at p. 30. Debtor acknowledged receiving financial help

from family when needed, but included no fixed contribution from family members in his monthly

income schedule. Debtor also did not mention available overtime pay from his job. As to his

expenses, Debtor failed to disclose that two days prior to filing, he had filed papers with the family

court to be relieved of a monthly insurance expense of $417.13. Debtor valued his total personal

property at $20,802, of which $16,572 was ascribed to a 2014 Ford Taurus, the only vehicle Debtor

listed on his schedules. Debtor responded "No" to owning ATVs, carpentry tools, or firearms. *Id.*

at p.11. On his statement of financial affairs, Debtor indicated that he had not given any gifts

valued at more than $600 to anyone within two years of filing nor had he sold or transferred any

property to anyone during the same period other than in the ordinary course of his financial affairs.

Id at 35, 36. He also affirmatively responded that he did not "hold or control" or store property

belonging to someone else. *Id.* at 37. Debtor's real property in McGraw, New York was listed at

4

its tax assessed value at $266,087. The chapter 7 case proceeded to discharge and the case was closed.

Creditor proceeded to press enforcement of the Amended Judgment. Just before the return of the enforcement proceeding, and less than six months after filing his chapter 7 case, Debtor filed the current chapter 13 case. Debtor testified that the purpose of the chapter 13 filing was to avoid a forced sale of his home, a foreseeable outcome upon enforcement of the Amended Judgment, as garnishment of his wages would have put him further in arrears on his mortgage (he was $21,000 in arrears at the time). The items listed in his chapter 13 schedules are almost identical to what he listed in his chapter 7 filing with a few exceptions. EX. 2[7]. The salient difference is that Debtor reflects a positive net monthly income of $592.23, attributable to a combination of reduced expenses and increased income in the form of a $650.00 monthly contribution from his father and overtime work undertaken at his same job. *Id* at 29. Debtor's responses to questions in the statement of financial affairs are the same as in the chapter 7 filing. Debtor represents that (i) he gave no gifts that had a value in excess of $600 to anyone within two years of the filing, (ii) there were no sales or transfers of property outside the ordinary course of his financial affairs and (iii) he is neither holding nor storing property for another.

Although confirmation of Debtor's plan is not before the court at this time, the court takes judicial notice of the proposed plan (Doc. 2). The plan proposes to pay Creditor's claim by bifurcating it into (i) an unsecured priority claim of $7,693.99 for outstanding support obligations to be paid in full and (ii) a general unsecured claim of $7,000 for the distributive property claim,

---

[7] Debtor's chapter 7 schedules listed personal property at a value of $20,802.00, while Debtor's chapter 13 schedules value personal property at $9,180.00. This discrepancy is largely explained by Debtor's disparate accounting of his 2014 Ford Taurus. Although listed as personal property in his chapter 13 filing, Debtor did not include its then retail value of $15,900 in the total value of his personal property; its value was included, however, as part of the total value of $20,802.00 ascribed to his personal property in his chapter 7 filing.

which is proposed to be paid a 1% distribution or $70.00. The plan makes no provision for payment

of temporary maintenance arrears. As the claims bar date has passed, the remaining claims are

limited to (i) a New York State priority tax claim in the amount of $4,108.68, (ii) a secured claim

of $18,452 against Debtor's 2014 Ford Taurus on which Debtor's father is also liable, and (iii) a

secured mortgage claim against Debtor's real property which includes $23,953.99 in arrears.

*Debtor's Real Property and Hearing Testimony*

Debtor owns two adjacent parcels of rural property in McGraw, New York in which he

asserts a homestead exemption. The property, estimated to be approximately 110 to 114 acres by

Debtor's father, Lyle Eugene Bush, has an outstanding mortgage which secures a note cosigned

by the Debtor and his father. Debtor lives in a single family home on the smaller 6 ½ acre parcel.

The larger parcel, which contains a pond, is developed as a family camp, improved with a wood-

framed cabin, a pole barn and several storage trailers. The camp has been in the Debtor's family

for over 55 years. Owned initially by Debtor's grandfather, then Debtor's uncle and now, Debtor,

Debtor's extended family has always enjoyed use of the premises and the personal property that is

kept there.

Creditor identified many items of personalty stored on the property that were not listed in

Debtor's chapter 7 or chapter 13 filings. These include four vehicles registered with the New York

State Department of Motor Vehicles in Debtor's name, home furnishings, and equipment used for

recreational and agricultural purposes. At the hearing, Debtor testified that much of the personal

property referenced by Creditor was property of his father or family. He stated that he does not

own the items stored in the three tractor-trailers on the property. He further testified that in

exchange for money advanced by his father to pay for his state court counsel, he transferred a 1966

Chevrolet, two ATVs, a Kubota tractor and a trailer to his father. Despite the transfers, Debtor continues to have use of these items, which remain on the property. Lyle Bush corroborated his son's testimony regarding the transfers and testified that no paperwork was executed regarding the transfers because he was dealing with his son. These were made within two years of Debtor filing for bankruptcy, and were not made in the ordinary course of Debtor's financial affairs. Lyle Bush testified that many of the camp furnishings have been present on the property from the "early days" or had been acquired by him over the years at various yard sales. According to both Debtor's and his father's testimony, the property houses numerous stored items belonging to family members other than Debtor. This was not made clear by Debtor's filings with the court and misrepresented by Debtor in his statement of affairs which has not been amended to date.

The court also heard the testimony of Rebecca Schramm, who was formerly engaged to the Debtor. She testified that on August 6, 2016, Debtor gifted her a ring of diamonds in white gold that had belonged to either his aunt or grandmother. Ms. Schramm brought the ring to a jeweler to have the stones reset and, afterwards, had the ring appraised. The appraisal valued the repaired ring at $4,000. This gift—clearly valued at more than $600—was given within two years of both the Debtor's chapter 7 and chapter 13 filings and was not disclosed on either of the Debtor's statements of financial affairs.

## ARGUMENTS

Creditor makes three primary assertions.

First, Creditor asserts that temporary maintenance arrears of $12,821.60 constitute a valid claim against Debtor's bankruptcy estate, a position opposed by Debtor in his Objection to Claim No. 2-2. Doc. 42. Debtor's objection is premised upon his assertions (i) that in light of the Stipulation, the state court erred in its award, (ii) that the final divorce judgment waived any

payment of arrears by its silence on the matter, (iii) that Creditor's enforcement efforts are untimely. Doc. 29 at 3, Doc. 29-1 at 4, Doc 61 at 7. Creditor responds by raising a defense of issue preclusion, arguing that in its temporary maintenance order, the state court considered and rejected Debtor's interpretation of the effect of the parties' Stipulation. Doc 50 at 2.

Second, Creditor asserts that the chapter 13 case should be dismissed under the theory of judicial estoppel. Counsel notes inconsistencies in Debtor's listed income and expenses in his chapter 7 and chapter 13 filings. EX. 1 and EX. 2. By granting Debtor a chapter 7 discharge in his initial case, Creditor argues that the court adopted Debtor's position, thus estopping him now from asserting a contrary position in this subsequent case. Doc 60 at 3. Debtor responds that these inconsistencies reflect real changes in his income and expenses which occurred after his chapter 7 filing and that he is appropriately proposing to fund his chapter 13 plan with funds that were not available during his chapter 7 filing.

Third, Creditor asserts that this chapter 13 case should be dismissed for lack of good faith under 11 U.S.C. § 1307(c).[8] Doc 60 at 4. She supports this contention by reference to Debtor's actions and statements in both his chapter 7 and chapter 13 filings under the multi-factor analysis described in *In re Lilley*, 91 F.3d 491 (3rd Cir. 1996). *Id.* Debtor responds by analyzing his actions under the nearly-identical multi-factor analysis described in *In re Buis,* 337 B.R. 243 (Bankr. N.D. Fla. 2006), but arrives at the opposite conclusion. Doc 61 at 5.

## DISCUSSION

*Creditor's Claim for Temporary Maintenance Arrears*

A claim is broadly defined under 11 U.S.C. § 101(5) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

---

[8] Creditor separately seeks to deny confirmation of the Debtor's chapter 13 plan for lack of good faith. (Doc. 25) Analysis of any related objection to the plan will occur in the context of confirmation.

disputed, undisputed, legal, equitable, secured, or unsecured." A creditor's execution and filing of

a proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R.

Bankr. P. 3001(f). When a party in interest objects to a claim, the court determines the amount of

the claim after notice and hearing, and sustains objections for a limited list of nine reasons, which

can include finding that the claim is "unenforceable against the debtor and property of the debtor,

under...applicable law." 11 U.S.C. §502(b)(1).[9]

The disputed claim in this case arose during a divorce action. Creditor was awarded

temporary maintenance in accordance with applicable New York law which states, in pertinent

part, "except where the parties have entered into an agreement....in any matrimonial action the

court may enter temporary maintenance or maintenance in such amount as justice requires...Such

order shall be effective as of the date of application therefor..."[10] N.Y. Dom. Rel. Law § 236 B (6)

(McKinney) (effective September 14, 2009 to August 12, 2010). Temporary maintenance is a

distinct, but overlapping legal obligation from maintenance awarded in a final divorce judgment,

as it is awarded *pendente lite*, for the period from the application for maintenance to the final order

of divorce. Should a party to a divorce fail to make ordered temporary maintenance payments,

NY DRL § 244 offers a means for collecting them. It provides:

> upon application the court shall make an order directing the entry of judgment for
> the amount of arrears of any other payments, so directed, together with costs and
> disbursements, unless the defaulting party shows good cause for failure to make
> application for relief from the judgment or order directing such payment prior to
> the accrual of such arrears.

N.Y. Dom. Rel. Law § 244 (McKinney). Further, under New York law, an order filed *pendente*

*lite* such as temporary maintenance may be enforced through entry of a money judgment after

---

[9] Unless otherwise noted, all sectional references hereafter are to Title 11 of the United States Code.

[10] See footnote 1 for a discussion of the inapplicability of N. Y. Dom. Rel. Law § 236 B (5-a)(f), which requires the
court to order temporary maintenance under a statutory calculation, rather than leaving such an order to the court's
discretion.

litigation concludes. *Pollack v. Pollack*, 3 A.D.3d 482, 484, 770 N.Y.S.2d 435 (2004) (Citing

*Walis v Walis*, 192 AD2d 598 [1993]; *Patricia Lynn N. v Vincent Michael N.*, 152 AD2d 547

[1989])).

Creditor offers the temporary maintenance order (Ex. 5) as evidence that the divorce court

vested a right to payment in Creditor, making a *prima facie* showing for the validity of her claim.

Debtor responds by producing two pieces of evidence which, according to Debtor's interpretation,

would refute its validity: (i) the Stipulation (Ex. 10 at 18), and (ii) the final divorce order (Ex. 8 at

6). Per Debtor's legal interpretation, the former renders the order for temporary maintenance

improper as a matter of law at the time it was entered, and the latter discharged the obligation such

that it is no longer enforceable. In addition, Debtor argues that Creditor's claim is invalid because

she has asserted it too late and improperly. The court shall further consider these three arguments

and supporting evidence.

Debtor first offers the Stipulation in which Creditor agreed that "Mrs. Bush waives spousal

maintenance." Debtor argues that the Stipulation should have barred the order of temporary

maintenance entered six months later. Creditor counters that the state court explicitly considered

and rejected an expansive reading of the Stipulation in the temporary maintenance order itself and

that this court is now precluded from considering this legal argument. The court finds that the

appropriate time and forum to have contested the validity of the temporary maintenance order

would have been through a then-timely appeal of that order and not now in this bankruptcy

proceeding. The Rooker-Feldman doctrine explicitly bars a losing party harmed by a state court

judgment from inviting federal court review of a previous judgment. *Green v. Mattingly*, 585 F.3d

97, 101 (2d Cir. 2009), *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 414 (1923), *D.C. Ct. of Appeals v.*

*Feldman*, 460 U.S. 462 (1983).[11] Therefore, the court will defer to the order of the state court as written, and recognize that the state court vested a right to payment in Creditor as a matter of law.

Next, Debtor presents the final divorce judgment which explicitly disclaims an award of maintenance. EX. 8. Debtor offers two legal arguments that this order extinguished Creditor's right to payment of temporary maintenance arrears. First, he argues for an expansive reading of the clause that there is "no award of maintenance, pursuant to the in-court oral stipulation..." as discharging any obligation to pay then-existing temporary maintenance arrears. *Id.* Second, he argues that the absence of a clause memorializing temporary maintenance arrears, or even any mention of temporary maintenance in the judgment, indicates that the court did not award any future right to payment, including arrears. Debtor avers that under either argument the final judgment has a preclusive effect, invoking in support of his position *res judicata* and the Rooker-Feldman doctrine.

As previously noted, this court will not presume to sit in appellate review of a state court order. However, this court must apply and interpret that judgment. If a judgment is clear and unambiguous, a later court applying it must adopt and give effect to the plain meaning of the judgment, "[b]ut, if the judgment is ambiguous, the reviewing court must construe its meaning, and in doing so may resort to the record upon which the judgment was based." *In re 85-02 Queens Blvd. Associates*, 212 B.R. 451, 455 (Bankr. E.D.N.Y. 1997); quoted by Construction of Judgments, 73 N.Y.Jur. 2d Judgments § 21; see also *U.S. v. Spallone*, 399 F.3d 415, 424 (2d Cir. 2005).

---

[11]The court does note, however, that the state court's application of an inapplicable statutory formula (see footnote 2) was arguably flawed, as the court did not set forth the factors it considered in making its maintenance award, a requirement under NY DRL, § 236(B)(6)(b) (September 14, 2009 to August 12, 2010)). This omission, however, may not undermine the judgment, as the award was calculated based on a statutory formula which, arguably, is inherently reasonable and within the discretion of the state court. Furthermore, the state court was within its power to ignore the Stipulation waiving maintenance, because the Stipulation did not meet the strict formal requirements for an agreement under NY DRL § 236 (B)(6) which would bar a state court judge from granting temporary maintenance.

Here, the intent of the issuing court with regard to temporary maintenance is not clear within the four corners of the final divorce order, which does not use the phrase "temporary maintenance," but does discuss "maintenance," so this court must examine the record to divine judicial intent. The clause waiving maintenance specifically cites the Stipulation which the same court had earlier found not to preclude an award of temporary maintenance, suggesting that the court did not intend to broadly eliminate any obligation to pay temporary maintenance arrears. That interpretation is consistent with New York state courts' rules of construction for waivers of temporary maintenance in prenuptial agreements, which strictly require unambiguous language, not merely discussion of maintenance. [12] Further, were the state court to have intended to discharge a then-existing obligation, under NY DRL § 236(B)(5-a)(h)(1)(m)(2), which the state court was applying, any decision to adjust temporary maintenance, including reducing it to zero, would have to be explicitly set forth on the record, but no evidence of such declaration has been presented to the court. As such, the court finds that the weight of evidence contradicts Debtor's legal interpretation that the maintenance clause in the final divorce judgment waived temporary maintenance arrears then due.

Debtor's next argument is similarly unpersuasive. Failure to mention the temporary maintenance order is not coterminous with eliminating the then-extant obligation it created by deliberate operation of law. Rather, the lack of explicit action extinguishing a right to payment suggests that such a right persists until its statute of limitations expires. Notably, neither party in this matter has offered evidence that the state court was apprised of temporary maintenance arrears when it prepared the final divorce order. Thus, it is possible that the court assumed that all

---

[12] The First Department in *Anonymous v. Anonymous*, 27 N.Y.S.3d 541 (N.Y. App. Div. 1st Dept. 2016), discussed a parallel issue—what language in a prenuptial agreement would constitute a contract barring temporary maintenance. That court held that a waiver must unambiguously encompass both temporary and final maintenance, and that the word maintenance is not construed broadly to encompass both obligations.

temporary maintenance payments had been made in compliance with the court's order. If the state court's silence speaks to anything, it is a refusal to rebate any temporary maintenance ordered, as might be expected if an award were overly generous or otherwise inappropriately granted.

Finally, Debtor offers Creditor's lack of collection attempts during divorce proceedings and the abortive attempt to reduce the arrears to judgment as evidence that the right to payment no longer exists. The former argument is unpersuasive. As discussed above, NY DRL § 244 provides a statutory mechanism for pursuing temporary maintenance arrears during proceedings, but Creditor did not do so. It is not, however, the sole mechanism for collection. Per N.Y. C.P.L.R. § 211(e), an action to recover for a temporary order awarding support, whether or not arrears have been reduced to money judgment, may be commenced within twenty years from the date of the default in payment. Therefore, despite Creditor's failure to pursue arrears during the divorce, Creditor was not foreclosed from seeking that relief thereafter. N.Y. C.P.L.R. § 211(e) (McKinney).   In fact, Creditor attempted to do so in June of 2017 ("the enforcement action") and recovered the Judgment which included an award for temporary maintenance arrears, which the state court never ruled to be invalid, though it subsequently excluded from the Amended Judgment largely on the basis of an improper pleading.

Based on the preceding analysis, the court finds that Debtor's unfulfilled obligations arising from the temporary maintenance order are a valid basis for a claim against his estate.

*Dismissal on the Basis of Judicial Estoppel*

The court has statutory authority to dismiss a chapter 13 bankruptcy filing "for cause" under 11 U.S.C. § 1307(c).   Though the statute offers a list of 11 specific causes, that list is not exclusive. *See* 11 U.S.C. § 102(3).   Debtor's invocation of the equitable doctrine of judicial estoppel could serve as one such cause, as judicial estoppel serves to preserve the integrity of the

judicial system, and can be invoked flexibly, even *sua sponte*. *See In re Auyeung*, No. BAP EC-14-1382, 2015 WL 3609301, at 11 (B.A.P. 9th Cir. June 9, 2015)(*citing In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 n. 14 (7th Cir.2010); *Kaiser v. Bowlen*, 455 F.3d 1197, 1205 (10th Cir.2006); *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 530 (5th Cir.2000)). Application of this doctrine to dismiss a bankruptcy action is unusual. More commonly, judicial estoppel is invoked in post-bankruptcy litigation to prevent a plaintiff from asserting a claim that went undisclosed in a prior bankruptcy. *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010)(*citing Negron v. Weiss*, 06–CV–1288, 2006 WL 2792769, at 3 (E.D.N.Y. Sept. 27, 2006); *citing also Galin v. IRS*, 563 F.Supp.2d 332, 338–39 (D. Conn. 2008) (noting that "judicial estoppel is particularly appropriate when a party does not disclose an asset to the bankruptcy court and then brings a claim in another court based upon the ownership of that asset")). However, a subsequent bankruptcy case is a legal proceeding in which judicial estoppel can reasonably apply.

The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another. *Amash v. Home Depot U.S.A., Inc.*, 503 B.R. 232, 236 (N.D.N.Y. 2013) (citing *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir.2004)). The moving party bears the burden of proof. "A party invoking judicial estoppel must show that (i) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (internal quotation marks and citations omitted). In the leading Second Circuit case applying judicial estoppel, *Simon v. Safelite Glass Corp.*, 128 F.3d 68, (2d Cir.1997), the court further elaborated on both of these elements. Regarding the first element, the court held that there must be "a true inconsistency between the

statements in the two proceedings," and that "if the statements can be reconciled, there is no

occasion to apply an estoppel." *Id* at 72–73 (internal citation omitted.) Regarding the second

element, the Second Circuit stated that judicial estoppel should be limited to "situations where the

risk of inconsistent results with its impact on judicial integrity is certain." *Id* at 72 (citing *First*

*Bates v. Long Island R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993); *accord Uzdavines v. Weeks*

*Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005). Yet, even should both conditions be met, "when

the first statement was the result of a good faith mistake or an unintentional error," judicial estoppel

is likewise not applicable. *Id* at 73 (internal citations omitted).

Here, Creditor asserts that Debtor's inconsistent representations regarding his net monthly

income (a $558.00 monthly deficit in his chapter 7 filing, and a $592.23 monthly surplus in his

subsequent chapter 13 filing) are inconsistent positions that the court adopted in successive

proceedings. Those figures are based on specific factual statements the Debtor made in schedules

I and J of his two filings. Therefore, the court shall analyze each line item which differs between

the filings to see if positions can be reconciled. Alternatively, Creditor offers that Debtor's

position regarding expected changes to income and expenses in his chapter 7 filing is inconsistent

with the actual changes represented in his chapter 13 filing, offering another basis for judicial

estoppel.

Debtor's then extant $417.13 insurance expense listed in his chapter 7 filing was eliminated

in his chapter 13 filing. The record reflects that this insurance coverage was subsequently

eliminated through judicial action. In addition, Debtor claims an additional $155.78 in payroll

deductions for new insurance costs in his chapter 13 filing which was not listed in his chapter 7

filing. These differences can be readily reconciled by the difference in insurance coverage on the

respective filing dates.

15

As between his chapter 7 and chapter 13 filings, Debtor shows a reduction of $64.00 in monthly car insurance and an increase in monthly payroll deductions of $47.36 (covering taxes, Medicare, and Social Security). These changes in expenses and payroll deductions have not been contested by Creditor and are consistent with possible changes in rates over a six-month period.

Debtor claims $270.00 for clothing, laundry, personal care, and medical expenses in his chapter 13 filing which were not claimed in his chapter 7 filing. These changes in expenses are uncontested by Creditor and run counter to the argument advanced in that they actually lower, rather than raise Debtor's disposable income available to pay claims in the chapter 13 filing. As such, regardless of whether these positions can be reconciled, they do not present a risk of inconsistent results with certain impact on judicial integrity and, therefore, are not subject to judicial estoppel.

Debtor claims a $650.00 contribution from his father as "other monthly income" in his chapter 13 filing. The response in his chapter 7 filing to the question of any expected increase or decrease in funds was "Debtor gets help from his family when needed." Creditor argues that monetizing this support in the later filing amounts to an inconsistent statement which, if listed in his chapter 7 filing, would have reversed the monthly deficit shown and, arguably, made Debtor ineligible to proceed under chapter 7. However, the court finds that these statements are not inconsistent. In his chapter 7 case, debtor declared that he expected a possible increase within the next year as a result of family support. Six months later, he declared that there had been an increase of $650.00 in income regularly received due to his father's commitment of support. Such familial support given in an act of goodwill does not fall within the disclosure demanded by Schedule I. Furthermore, financial support in the form of a fixed monthly gift is not uncommon in chapter 13

cases, particularly where, as here, a debtor's relative is liable jointly with the Debtor on obligations.[13] Accordingly, the court finds these two positions reconcilable.

Debtor claimed $475.00 per month of overtime pay in his chapter 13 filing which was not included in his chapter 7 filing. Indeed, assuming that Debtor had an expectation of receiving an additional $475 per month at the time of his chapter 7 filing, his failure to list that sum could amount to a material misrepresentation. However, if Debtor was not earning $475.00 per month in overtime pay at the time he filed chapter 7, and subsequently took on extra overtime hours, then these changes can be reconciled. Overtime work is voluntary and Debtor who may have lacked the incentive in chapter 7 might now be highly motivated to work overtime to support a chapter 13 plan. Since Creditor—who bears the burden of proof—has made an insufficient showing to persuade the court that these positions are irreconcilable, the court will not apply judicial estoppel.

In the alternative, Creditor argues that Debtor's representation in the chapter 7 filing that he did not expect changes in expenses or income (aside from family support) is inconsistent with the figures now claimed. Indeed, Creditor offers persuasive evidence that several of the changes discussed previously were, in fact, readily anticipated by Debtor. These include the elimination of his insurance costs, as the request to eliminate that cost was made to the court two days in advance of filing for chapter 7, and the court eventually allowed that change retroactive to the date of the request. Creditor also points to Debtor's 2% bump in salary, which was not claimed on Debtor's schedule I filed in chapter 7, but which had been announced by the union to which Debtor belongs. In this argument, the issue before the court is twofold: whether Debtor's failure to list expected changes in income and expenses in his chapter 7 filing, and later reflecting those changes in this chapter 13 case are contrary positions, and whether the court's adoption of these two

---

[13] As previously noted Debtor's father is jointly liable on Debtor's secured car and mortgage loans.

positions poses a risk of inconsistent results with certain impact on judicial integrity. The court answers both inquiries in the negative. Inconsistencies between expected and actual changes in income and expenses are not irreconcilable, and the court does not find that this implicates the doctrine of judicial estoppel. Debtor's motion for dismissal on the basis of judicial estoppel is, accordingly, denied.

*Dismissal for Lack of Good Faith*

Section 1307(c) grants the court statutory authority to dismiss a chapter 13 bankruptcy case for cause. In pertinent part, it provides that "on request of a party in interest or the United States trustee and after notice and a hearing, the court may…dismiss a case under this chapter…for cause, including…" The Code then proceeds to list 11 specific causes. Per § 102(3), however, the word "including" is not limiting and a lack of good faith may also constitute cause. *In re Prisco*, No. 1:11-CV-00474 LEK, 2012 WL 4364311, at 4 (N.D.N.Y. Sept. 24, 2012), aff'd, 574 F. App'x 19 (2d Cir. 2014).

To find a lack of good faith, courts consider the totality of the circumstances, though various courts have attempted to structure this analysis by listing key factors. *Prisco* at 4 (citing *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir.1999)). In *Lilley*, the case cited by Creditor, the court enumerated seven non-exclusive factors including: i) nature of the debt; ii) timing of the petition; iii) manner in which the debt arose; iv) debtor's motive in filing the bankruptcy petition; v) manner in which the debtor's actions have affected creditors; vi) debtor's treatment of creditors both before and after the petition filing; and vii) whether the debtor has been forthcoming with both the bankruptcy court and the creditors. In *Buis*, the case cited by Debtor, the court adopted that list, and added the following four additional factors: viii) the misrepresentation of facts in the petition, ix) debtor's history of filings and dismissals, x) whether debtor undertook the bankruptcy merely

to defeat the outcome of state court litigation, and xi) whether debtor engaged in egregious behavior prior to or during the filing. Although there is no binding Second Circuit precedent adopting this analysis, the court shall consider the foregoing factors in assessing Debtor's good faith.

### *Property Omitted from Debtor's Disclosures*

Creditor cites numerous items located on or near Debtor's property that were omitted from his schedule of listed property as evidence of misrepresentation, lack of forthrightness or egregious conduct. Debtor does not deny that the referenced property is present on or near his home, but offers various explanations for its omission from his schedules. Debtor proffers that i) some property was formerly his, but has been transferred to another's possession, ii) that some property was never his, but rather belonged to his family; and iii) that the exclusions are *de minimis* errors.

Creditor identifies property which Debtor failed to disclose and allegedly transferred to his father, Lyle Bush, and former girlfriend, Rebecca Schramm, and notes its omission from both Schedule A/B and Form 107 (which requires disclosure of any transfers) as evidence of bad faith. Debtor claims to have sold to his father for cash four motor vehicles and trailers which remain registered in Debtor's name[14] and an unregistered 2008 Kubota tractor, none of which were listed in his Form 107 disclosure. Ex. 2 at 37. Creditor proposes that either these transfers never occurred (and the vehicles were omitted deliberately) or that these transfers were fraudulent attempts to hide assets. The court finds testimony by Debtor and his father persuasive, that they intended to make informal transfers within the family, while preserving benefits of ownership for Debtor, but did not understand the implications of those acts within the context of a bankruptcy. Certainly the lack of necessary formalities, timing, and continued physical possession of the vehicles invites

---

[14] A 1966 Chevrolet Impala, a 2002 Worth cargo trailer and two 2001 Honda All-Terrain Vehicles.

scrutiny as to whether the trustee should avoid the transfers pursuant to 11 U.S.C. §§ 548(a)(1)(A) or 548(a)(1)(B).[15]  Debtor willingly stipulated to ownership of the vehicles, so they will be included in his estate and their value contributed to his plan, rendering that scrutiny unnecessary. However, Debtor has not made such stipulation regarding the ring he gifted to Rebecca Schramm within three months of filing, which Ms. Schramm testified has a repaired value of $4,000, or the Kubota tractor, which has an indeterminate value.  These items must be considered in Debtor's formulation of an amended plan.  At the moment, however, the court must consider whether the transfers themselves or the transfers' omissions from Debtor's filing evidences bad faith.  The court finds that Debtor's description of the ring's provenance, as belonging to either an aunt or grandmother, suggests that he did not consider it to be his property, but rather belonging to his family, and that his misrepresentation sprung from this error and is not indicative of bad faith. Neither does the court find, in this instance, that the pattern of exchanging personal property for cash between Debtor and his father is indicative of bad faith.

Creditor has identified a variety of personal property within Debtor's physical possession, or present on his real property, which he regularly uses and enjoys, and proposes that omission of this property from Debtor's Schedule A/B is evidence of bad faith.[16]  In his testimony, Debtor did not deny that the property exists, but claimed that the property belongs to his extended family.  A family is generally not a legal entity in which ownership interests can vest.  That said, Debtor may indeed have some legal or equitable interests in this property, the value of which must be addressed during the confirmation process.  At this time, acting within its discretion, the court finds that the

---

[15] Creditor's attorney notes that Lyle Bush was formerly employed by the Department of Motor Vehicles, and thus should have been aware of the formalities associated with sale or transfer of a vehicle.

[16] Property within Debtor's possession, which he claims belongs to others includes mowers, furniture, and a "deuce and a half" truck allegedly purchased by Debtor's father, and firearms, furniture, collections of Neon signs, beer steins, and a pinball machine allegedly purchased by various extended family members.

alleged omissions of Debtor's interests in personal property from his schedules are not evidence of bad faith.

Creditor has identified several other items in which Debtor allegedly has a legal interest, but which he arguably undervalued or failed to list.[17] Many of these items are stored in the camp and, as such, may be subject to the same divided ownership as "family" items purchased by Debtor's relatives. Creditor's allegations were supported neither by testimonial nor written evidence, and the court finds that Creditor has not met her burden to show that any items were undervalued, let alone in bad faith. For items allegedly not listed, the court finds that Creditor's assertions as to their presence, without further evidence or testimony regarding ownership, are similarly non-persuasive.

### Context of Debtor's Chapter 13 Filing

In its analysis of Debtor's good faith, the court must assess Debtor's purpose for filing, particularly whether the bankruptcy is being used as a mechanism to thwart a state court outcome or harm the rights of a specific creditor. Debtor filed this chapter 13 case immediately prior to the return date of a state court enforcement proceeding. This likely would have resulted in garnishment of his wages, which Debtor testified would have caused him to default on mortgage payments and possible foreclosure on his real property. Doc. 29 at ¶ 4 and Doc 61 at 3. The court finds this explanation credible, but applies heightened scrutiny in light of the acrimonious relationship of the parties. This case involves just four claims: a fully secured auto loan, a fully secured home mortgage, priority unsecured tax arrears and Creditor's divorce-related claims, which are part

---

[17] Property described as undervalued by Creditor includes, but is not limited to, Debtor's household goods and furnishings (disclosed value $2,000), home electronics (disclosed value $500), equipment for sports and hobbies (disclosed value $750). Property allegedly not listed includes, but is not limited to, collectibles, jewelry and firearms. Doc. 31 ¶¶ 27-42. Creditor proposes a total value for these items in excess of $20,000, but offers no specific valuations.

priority, and part unsecured non-priority.    Notwithstanding that Creditor is the sole general

unsecured claimant and will be the party most adversely impacted by Debtor's 1% plan, the court

finds that the Debtor had a legitimate reason to file this case.  Debtor's explanation is credible, that

his filing was to prevent a foreclosure and establish a feasible plan to pay his creditors. Preservation

of a residence at the expense of unsecured creditors is a primary motivating factor for many chapter

13 filings.

## CONCLUSION

At the time of her divorce, Creditor had a cause of action against Debtor for temporary

maintenance arrears.  That cause of action is a valid basis for a claim in this case, and has neither

been extinguished by operation of law, nor by expiration of the applicable statute of limitations.

The positions of the Debtor which differ between his chapter 7 and chapter 13 filings, are

reconcilable.  Therefore, the doctrine of judicial estoppel does not apply.

The court finds that this filing was made in good faith, and that Debtor should be afforded

the opportunity to propose an amended plan in good faith.  In formulating such a plan, Debtor's

counsel is to take heed of the findings in this decision.

So Ordered.

Dated:  December 19, 2017                    Margaret Cangilos-Ruiz
              Syracuse, New York                  United States Bankruptcy Judge